1

2

3

4

5

6

7

8

9

10          UNITED STATES DISTRICT COURT

11          SOUTHERN DISTRICT OF CALIFORNIA

12

13   BERNARD GROSS,                          Case No. 13-cv-1250-W(BGS)

14                                           **ORDER GRANTING IN PART**
                              Plaintiff,     **AND DENYING IN PART**
15                                           **DEFENDANT'S MOTION TO**
                                             **DISMISS [DOC. 4]**
16        v.

17   WELLS FARGO BANK,

18

19                            Defendant.

20

21        On May 29, 2013, Plaintiff Bernard Gross commenced this action against

22   Defendant Wells Fargo Bank ("Wells Fargo").  Wells Fargo now moves to dismiss the

23   complaint under Federal Rule of Civil Procedure 12(b)(6).  Mr. Gross opposes.

24        The Court decides the matter on the papers submitted and without oral

25   argument.  See Civ. L.R. 7.1(d.1).  For the reasons discussed below, the Court

26   **GRANTS IN PART** and **DENIES IN PART** Wells Fargo's motion.

27   //

28   //

## I.    BACKGROUND

Mr. Gross has a mortgage that is being serviced by Wells Fargo.  (Compl. ¶ 12.) When Wells Fargo acquired the servicing rights, Mr. Gross was in default.  (Id. ¶ 13.) Mr. Gross, who is 84 years old, suffered a heart attack on January 13, 2013 and was admitted to the hospital.  (Id. ¶ 14.)  Because of his hospitalization, Mr. Gross was not able to work for a number of months, which led to him not making his April and May 2013 mortgage payments.  (Id. ¶ 15.)

Wells Fargo began repeatedly calling Mr. Gross in April and May. (Compl. ¶ 16.) Mr. Gross repeatedly explained to a Wells Fargo representative that he had been hospitalized, could not work, and therefore could not make any payments on the loan. (Id. ¶ 17.)  An hour after the previous representative called, another Wells Fargo representative called and Mr. Gross explained his situation again.  (Id.)  This occurred at least 20 times, and every time, Mr. Gross asked Wells Fargo to stop calling him.  (Id.) The calls have not stopped.  (Id.)

On May 29, 2013, Mr. Gross filed this complaint asserting claims for: (1) violations of the Fair Debt Collection Practices Act ("FDCPA"); (2) violations of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"); (3) violations of the Telephone Consumer Protection Act ("TCPA"); (4) elder abuse; and (5) intrusion. Wells Fargo now moves to dismiss Mr. Gross's claims.  Mr. Gross opposes.

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party.  Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S., 497 F.3d 972, 975 (9th Cir. 2007).  Material allegations, even if doubtful in fact, are assumed to be true.  Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007).  However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted).  In fact, the court does not need to accept any legal conclusions as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds).  Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. Id.  It may also consider

1   material properly subject to judicial notice without converting the motion into one for

2   summary judgment.  Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

3

4   III.   DISCUSSION

5        A.    Wells Fargo's Requests for Judicial Notice

6        Wells Fargo seeks judicial notice of eight documents, including recorded deeds

7   of trust and a written not by which the loan was secured, the loan modification

8   agreement, and relevant government documents.  (Doc. 4-1.)  Mr. Gross does not

9   oppose.  The Court may take notice of facts that are "not subject to reasonable dispute

10  in that [they are] . . . capable of accurate and ready determination by resort to sources

11  whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b)(2).

12       Because some of Wells Fargo's documents are matters of public record, and their

13  accuracy is not subject to reasonable dispute, the Court **GRANTS** Wells Fargo's

14  request and takes judicial notice of each of them.  See Reyn's Pasta Bella, LLC v. Visa

15  USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

16

17       B.    FDCPA

18       Wells Fargo moves to dismiss Mr. Gross's FDCPA claims because "as the

19  originator of the debt, Wells Fargo is not a 'debt collector' under the [FDCPA]."

20  (Def.'s Mot. 4.)  Mr. Gross argues that Wells Fargo falls under the FDCPA because it

21  obtained the subject loan while it was in default.[1]  (Pl.'s Opp'n 9.)

22       The FDCPA does not govern efforts by creditors collecting their own debts. 15

23  U.S.C. § 1692a(6).  Moreover, the term debt collector does not include "any person

24  collecting or attempting to collect any debt owed or due or asserted to be owed or due

25  another to the extent such activity . . . (ii) concerns a debt which was originated to

26  _____

27          [1] Mr. Gross also suggests that Wells Fargo's argument regarding foreclosure is misguided.  (Pl.'s
    Opp'n 10.)  However, Wells Fargo falls short of making an argument regarding foreclosure.  Although
28  Wells Fargo does cite law regarding the applicability of the FDCPA during foreclosure, it never makes
    any substantive argument along these lines.  Therefore, the Court disregards this argument.

such person; (iii) concerns a debt which was not in default at the time it was obtained by such person[.]" 15 U.S.C. § 1692a(6)(F).

As Wells Fargo points out, the carve out in subsection (F) is disjunctive, so if an alleged "debt collector" fits any of the exceptions, they are not governed by the FDCPA. Wells Fargo argues, and Mr. Gross does not dispute, that the loan at issue in this case was issued by World Savings, Wells Fargo's predecessor in interest. Thus, Wells Fargo is exempt from the FDCPA in this matter as they are the originator of the debt in question. Because Wells Fargo is exempt under § 1692a(6)(F)(ii), the Court need not address Mr. Gross's argument regarding § 1692A(6)(F)(iii).

In light of the foregoing, the Court **GRANTS WITH LEAVE TO AMEND** Wells Fargo's motion to dismiss Mr. Gross's FDCPA claims.

### C.    Rosenthal Act

Wells Fargo next argues that Mr. Gross's Rosenthal Act claims should be dismissed because it is not a "debt collector" for purposes of the Rosenthal Act. (Def.'s Mot. 5.) It also appears to argue that the instant loan is not a "debt" under the Rosenthal Act. (See id.) Alternatively, Wells Fargo suggests that even if the Rosenthal Act did apply, Mr. Gross's claims are still insufficient. (Id. at 6.) Mr. Gross responds that the Rosenthal Act governs Wells Fargo and the instant loan, and that his claims are sufficiently pled.

"The definition of the 'debt collector' under the [Rosenthal Act] is broader than under the [FDCPA] and includes any person who, 'in the ordinary course of business,' collects a debt 'on behalf of himself or herself or others.'" Horton v. Cal. Credit Corp. Ret. Plan, 835 F. Supp. 2d 879, 890 (S.D. Cal. 2011) (citing Cal. Civ. Code § 1788.2(c)). In this case, Wells Fargo is collecting on a debt that it originated, and because it does so "in the ordinary course of business," it is a "debt collector under the Rosenthal Act." Wells Fargo's arguments to the contrary are unpersuasive as they attempt to equate the FDCPA's definition with the Rosenthal Act's definition. (Def.'s

1  Mot. 5:15–18.)  Therefore, the Court **DENIES** Wells Fargo's motion insofar as its
2  argument that it is not a "debt collector" under the Rosenthal Act.

3          Wells Fargo's argument that the instant loan is not a "debt" under the Rosenthal
4  Act is also unpersuasive.  "Debt" is defined as "money, property or their equivalent
5  which is due or owing or alleged to be due or owing from a natural person to another
6  natural person." Cal. Civ. Code § 1788.2(d).  Wells Fargo cites several cases in which
7  district courts appear to have held that a mortgage loan does not qualify as debt.
8  However, such a bright-line rule belies a plain reading of the statute.  This Court agrees
9  with the <u>Reyes</u> court that "these decisions are incorrect to the extent they suggest that
10 collection on a mortgage debt can never give rise to a claim under the Rosenthal Act,
11 or that a loan service can never be a debt collector under that statute." <u>Reyes v. Wells</u>
12 <u>Fargo Bank, N.A.</u>, No. C-10-01667 JCS, 2011 WL 30759, at *19 n.8 (N.D. Cal. Jan.
13 3, 2011).  Therefore, the Court **DENIES** Wells Fargo's motion insofar as its argument
14 that the instant mortgage loan is not a "debt" under the Rosenthal Act.

15         However, the Court agrees with Wells Fargo's argument that Mr. Gross's
16 Rosenthal Act claims are otherwise insufficient.  (Def.'s Mot. 5–6.)  Mr. Gross's claim
17 that Wells Fargo violated § 1788.17 of the Rosenthal Act fails because it relies on the
18 assumption that he properly plead violations of the FDCPA.  Because the Court has
19 dismissed Mr. Gross's FDCPA claims above, these claims must necessarily fail.

20         The remainder of Mr. Gross's Rosenthal Act claims are vague, leaving it
21 impossible for Wells Fargo or this Court to discern which provisions were allegedly
22 violated.  While Mr. Gross cites almost the entire Rosenthal Act in the heading of his
23 second cause of action (§§ 1788-1788.32), he fails to allege which specific sections of
24 the Act were violated.  (<u>See</u> Compl. ¶¶ 29–32.)  Without such allegations, it is
25 impossible for the Court to effectively evaluate the sufficiency of Mr. Gross's Rosenthal
26 Act claims. Mr. Gross contends that he has put Wells Fargo on notice of its Rosenthal
27 Act violations by alleging that Wells Fargo "telephoned him more than one time per
28 day, telephoned him after specifically being told not to, [after Mr. Gross] told [Wells

Fargo] that their telephone calls are affecting his health and yet [Wells Fargo] continued to call, [Wells Fargo] violated the TCPA and [Mr. Gross] has received no less than 150 phone calls over a 2 months period." (Pl.'s Opp'n 14 (citations omitted).) While it is true that he made these allegations, these allegations fail because it is impossible to tell which part of the Rosenthal Act these acts allegedly violate.

Therefore, the Court **GRANTS WITH LEAVE TO AMEND** Wells Fargo's motion insofar as its argument that Mr. Gross's allegations under the Rosenthal Act are insufficient.

### D.   Elder Abuse

Wells Fargo also moves to dismiss Mr. Gross's elder-abuse claims because he has not alleged the requisite "wrongful taking of property" for "financial elder abuse" and because Wells Fargo's alleged actions do not otherwise amount to "other treatment with resulting physical harm or pain or mental suffering." (Def.'s Mot. 7.)  Mr. Gross argues that he has sufficiently pled a claim for "financial elder abuse." (Pl.'s Opp'n 15.)

According to the California Welfare and Institutions Code, "abuse of an elder or a dependent adult" means either of the following:

> (a) Physical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering.

> (b) The deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering.

Cal. Welf. & Inst. Code § 15610.07.  The code defines "mental suffering" as

> fear, agitation, confusion, severe depression, or other forms of serious emotional distress that is brought about by forms of intimidating behavior, threats, harassment, or by deceptive acts performed or false or misleading statements made with malicious intent to agitate, confuse, frighten, or cause severe depression or serious emotional distress of the elder or dependent adult.

Id. § 15610.53.  The code also defines "financial elder abuse" in the following manner:

//

//

- 7 -

13cv1250

(a) "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:

(1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.

(2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.

(3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 15610.70.

(b) A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.

(c) For purposes of this section, a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult.

Id. § 15610.30.

As an initial matter, the Court notes that courts are divided as to whether "financial elder abuse" is an independent cause of action or an enhancement of remedies for other causes of action. See Perlin v. Fountain View Mgmt., Inc., 163 Cal. App. 4th 657, 664-66 (2008); Das v. Bank of America, 186 Cal. App. 4th 727, 743-44 (2010). The Court need not resolve that issue here, and instead assumes *arguendo* that § 15610.30 creates an independent cause of action for financial abuse of an elder. Because it appears from the complaint and Mr. Gross's opposition to this motion that he intends to state a claim for both "elder abuse" and "financial elder abuse," the Court will evaluate the sufficiency of each claim in turn.

Mr. Gross has sufficiently alleged "elder abuse" as defined by § 15610.07(a). He has sufficiently pled that he is an "elder." (Compl. ¶ 35.) He has also pled that Wells

1 Fargo "harass[ed]" him which lead to his "mental suffering." (Id. ¶ 36–37.)  When
2 taken as true, these pleadings alone state a claim under the "other treatment with
3 resulting physical harm or pain or mental suffering" prong that is plausible on its face.
4 See Cal. Welf. & Inst. Code § 16510.07(a); Iqbal, 556 U.S. at 678.

5 However, Mr. Gross has not sufficiently alleged "financial elder abuse."  The
6 complaint is completely devoid of any allegations that Wells Fargo took, secreted,
7 appropriated, obtained, or retained "real or personal property of an elder or dependent
8 adult."  Although Wells Fargo accurately points this out in its motion to dismiss, Mr.
9 Gross fails to contest this argument by citing any such allegations in the complaint. (See
10 Def.'s Mot. 7:12–15.)

11 Therefore, to the extent that Mr. Gross is alleging elder abuse in violation of
12 California Welfare and Institutions Code § 15610.07, the Court **DENIES** Wells Fargo's
13 motion.  However, to the extent that Mr. Gross is alleging financial elder abuse in
14 violation of California Welfare and Institutions Code § 15610.30, the Court **GRANTS**
15 **WITH LEAVE TO AMEND** Wells Fargo's motion.

16
17   **E.    TCPA**

18 Wells Fargo next moves to dismiss Mr. Gross's TCPA claims as insufficient
19 because "there are no facts alleged as to how plaintiff is aware" that the calls were made
20 by an automated dialing system.  (Def.'s Mot. 8.)  In addition, Wells Fargo argues that
21 Mr. Gross's claims are subject to dismissal because "any calls made by Wells Fargo to
22 plaintiff concerning his home loan are exempted by the statute and its implementing
23 regulations because there is an established business relationship between Wells Fargo
24 and the plaintiff."  (Id.)  Wells Fargo cites 47 U.S.C. § 227(b)(2)(B) and 47 C.F.R. §
25 64.1200(a)(2)(iv) in support of this exemption argument.

26 Mr. Gross argues that Wells Fargo's first argument fails because he does not need
27 to allege how he was aware that the alleged phone calls were made by an automated
28 dialing system.  (Pl.'s Opp'n 19.)  Wells Fargo fails to address this argument in its reply,

1   and thus concedes this point to Plaintiff.  The Court also agrees with Mr. Gross.

2   Because Mr. Gross alleged that these calls were made by an automated dialing system

3   (compl. ¶ 21), and since the Court must take all material allegations of fact as true and

4   construe the complaint in a light most favorable to the Mr. Gross, the Court **DENIES**

5   Wells Fargo's  motion on this ground.

6          Mr. Gross also argues that the exemption that Wells Fargo cites only applies to

7   calls to "residential telephone lines" and not calls to cellular phones.   (Pl.'s

8   Opp'n 18–19.)  Again, Wells Fargo fails to address this argument in its reply, conceding

9   the point to Mr. Gross.  In addition, while § 227(b)(2)(B) does authorize some

10  exemptions to be made, Wells Fargo fails to provide any detail as to how those

11  exemptions apply here.  Wells Fargo's citation to 47 C.F.R. § 64.1200(a)(2)(iv) is

12  equally perplexing, as such a section does not exist.  Therefore, the Court **DENIES**

13  Wells Fargo's motion to dismiss based on being exempt from the statute.

14

15          **F.     Intrusion**

16          Lastly, Wells Fargo moves to dismiss Mr. Gross's intrusion claims by arguing that

17  "Plaintiff alleges no facts amounting to a physical intrusion into any location and the

18  claim itself offers no insight as to what the zone of privacy consists of."  (Def.'s Mot. 9.)

19  In addition, Wells Fargo argues that its alleged behavior "is not offensive in any sense

20  and certainly does not constitute a breach of social norms."  (Id. at 10.)

21          "To prove actionable intrusion, the plaintiff must show the defendant penetrated

22  some zone of physical or sensory privacy surrounding, or obtained unwanted access to

23  data about, the plaintiff.  The tort is proven only if the plaintiff had an objectively

24  reasonable expectation of seclusion or solitude in the place, conversation or data

25  source."  Shulman v. Grp. W. Prods., Inc., 18 Cal. 4th 200, 232 (1998).  Here, Mr.

26  Gross has sufficiently alleged intrusion.

27          First, contrary to Wells Fargo's suggestion, Mr. Gross has alleged an intrusion.

28  (Compl. ¶ 43.)  Second, he has in fact alleged what the zone of privacy consists of.

Although Mr. Gross has not explicitly defined a "zone of privacy," his allegations make it clear that his alleged zone of privacy is his home and work place. (See id. ¶ 44 ("Plaintiff had a reasonable expectation of seclusion and solitude at home and at work which is the primary place where most of these phone calls took place.").) Third, Mr. Gross clearly alleges that the numerous calls he received would be highly offensive to a reasonable person. (Id. ¶ 45.) This is sufficient at this point of the proceedings. Thus, the Court **DENIES** Wells Fargo's motion to dismiss Mr. Gross's intrusion claim.

## IV.   CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART**. Mr. Gross may amend any of the aforementioned claims where leave was given no later than **February 10, 2014**.

**IT IS SO ORDERED.**

DATE: January 21, 2014

_____
**HON. THOMAS J. WHELAN**
United States District Court
Southern District of California